**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1778
_____

KENDELL CHARLES ALEXANDER, SR.,
Appellant

v.

ROBERT ORTIZ
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.N.J. No. 1:15-cv-06981)
Honorable Jerome B. Simandle, U.S. District Judge
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on May 28, 2020

Before: SMITH, *Chief Judge*, HARDIMAN, and KRAUSE, *Circuit Judges*

(Opinion filed: May 29, 2020)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

KRAUSE, *Circuit Judge*.

Kendell Alexander, a former federal inmate who worked in his prison's UNICOR facility,[1] brought a Fifth Amendment claim under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), against his manager, Robert Ortiz, for allegedly denying him pay increases, overtime opportunities, and promotions on account of race. The District Court granted Ortiz's motion to dismiss. For the following reasons, we will affirm.[2]

## A.    Discussion[3]

The Supreme Court has "clearly communicate[d] that expanding *Bivens* beyond those contexts [it has] already recognized . . . is disfavored." *Bistrian v. Levi*, 912 F.3d 79, 95 (3d Cir. 2018). Thus, before allowing a damages remedy for a federal officer's constitutional violations, a court must first compare the claim to those previously recognized under *Bivens* and ask whether the claim either "arises in a new context or involves a new category of defendants." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020)

---

[1] UNICOR is a wholly owned corporation of the federal government that seeks to "provide employment for the greatest number of those inmates in [federal] . . . correctional institutions . . . as is reasonably possible." 18 U.S.C. § 4122(b)(1).

[2] The Court appointed Christian J. Pistilli, Esq. and Noam Kutler, Esq. to represent Alexander on appeal. They have ably discharged that responsibility, for which the Court is grateful.

[3] The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291. On appeal, Alexander has not contested the District Court's dismissal of his First Amendment retaliation claim against Ortiz, so we deem that claim abandoned and will not discuss it here. *See Free Speech Coal., Inc. v. Att'y Gen.*, 677 F.3d 519, 545 (3d Cir. 2012).

(internal quotation marks and citation omitted).  If it does, the next question is whether there are "any special factors [that] counse[l] hesitation" in extending *Bivens*.  *Id.* (alterations in original) (internal quotation marks and citation omitted).  If the court answers both questions in the affirmative, it may not expand *Bivens* to cover the claim.

Alexander argues (1) his claim arises in an existing context and against a category of defendants the Supreme Court already recognized in *Davis v. Passman*, 442 U.S. 228 (1979); and (2) even if the context is considered new, no special factors weigh against creating a *Bivens* remedy.  We reject both contentions.

1.     New Context

Alexander challenges the District Court's determination that his racial discrimination claim against his UNICOR supervisor arises in a context different from *Davis*, which involved a gender discrimination claim against a congressman.  *See* 442 U.S. at 230–31.  We think the District Court correctly reasoned that "*Davis*, while addressing a Fifth Amendment discrimination claim, concerns a congressional" rather than "prison employment context."  JA 25.

The Supreme Court's conception of "new context" is "broad," *Hernandez*, 140 S. Ct. at 743, and includes such considerations as whether a different type of officer is sued or the officer is subject to different "statutory or other legal mandate[s]," *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1860 (2017).  A UNICOR manager and a congressman are officers from different branches of the federal government, and as the District Court recognized, a UNICOR workplace and a congressional office are "vastly different," operating under separate sets of legal mandates.  JA 25–26.

3

Because "[n]one of the [Supreme Court's] prior *Bivens* cases addressed federal prisoners in the prison employment context," JA 25, the District Court correctly determined that Alexander's claim arises in a new context.

2. Special Factors Counseling Hesitation

Alexander also urges that the District Court erroneously denied him a *Bivens* remedy out of concern for the separation of powers. We see no flaw in the District Court's special-factors analysis.

The District Court began with the premises that "separation-of-powers principles are or should be central to the analysis" and that, when considering "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed," any "hesitat[ion] before answering that question in the affirmative" indicates Congress, not the court, should decide whether to create a damages remedy. JA 32–33 (quoting *Ziglar*, 137 S. Ct. at 1857–58).

With this "particularly weighty" concern for not intruding on the other branches in mind, *Bistrian*, 912 F.3d at 90, the District Court observed that "the prison workplace is an area that is heavily regulated by the legislative and executive branches." JA 34. Indeed, Congress envisioned that UNICOR would be managed within the executive branch by a board appointed by the President, *see* 18 U.S.C. § 4121, and did not suggest any role for the federal courts. And especially telling is that Congress knew how to create a remedy for injuries suffered in UNICOR workplaces but chose to do so within the executive branch and, even then, only for physical injuries. As the District Court

4

pointed out, in 18 U.S.C. § 4126(c)(4), "Congress specifically created a mechanism [through UNICOR and the Federal Bureau of Prisons] by which prisoners could be compensated for workplace injuries and illnesses, but did not extend that remedy to other forms of workplace discrimination or constitutional violations."  JA 33–34; *see also* 28 C.F.R. pt. 301.  We agree this remedial scheme for physical injuries is a strong signal that Congress did not intend to create a judicially enforceable remedy for constitutional violations and that any decision to do so must be left to Congress.

In sum, the District Court's conclusion that "the prison workplace context is a special factor precluding extending the *Bivens* remedy," JA 32, is correct.

## B.    Conclusion

For the foregoing reasons, we will affirm the District Court's order dismissing Alexander's complaint.